UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, by ANDREW
M. CUOMO, ATTORNEY GENERAL OF THE STATE OF
NEW YORK,

                           Plaintiffs,

            -against-

411 REST. CORP. D/B/A TONIC EAST,

                         Defendant.

**COMPLAINT AND
JURY DEMAND**

**Case No.
08-CV-2088 (PAC) (HP)
ECF CASE**

The People of the State of New York, by and through their attorney, Andrew M. Cuomo,

Attorney General of the State of New York, as and for their complaint, allege, upon information and

belief, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action against Defendant 411 Rest. Corp. d/b/a Tonic East for engaging

in a pattern and practice of discrimination by denying the admittance of African-Americans

into Tonic East on the basis of their race and/or color.  Tonic East is a large multi-level bar

and restaurant located at 411 Third Avenue, New York, New York.

2.      Specifically, Defendant adopted and instructed its bouncers to enforce an unwritten dress

code that was designed to exclude individuals wearing what is commonly referred to as "hip-

hop" clothing or "urban wear."  Tonic East management instructed bouncers to deny entry

to individuals wearing certain brands of clothing and shoes, including Sean John shirts,

Rocawear shirts, Timberland boots, and Nike Air Force One sneakers. The implementation

of this dress code policy disparately impacts African-Americans because it results in the

disproportionate exclusion of African-Americans from Tonic East.

3.      In addition, Defendant enforces this dress code in a discriminatory manner by denying the

admittance of certain African-Americans based on alleged dress code violations, while granting the admittance of similarly-dressed Caucasian patrons.

4.    Plaintiffs' federal law claims arise under 42 U.S.C. § 1981. Plaintiffs' state and local law claims arise under New York State Human Rights Law § 296(2)(a), New York State Civil Rights Law § 40, New York State Civil Rights Law § 40-c, New York State Executive Law § 63(12), and New York City Administrative Code § 8-107(4).

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). This Court has jurisdiction over Plaintiffs' state and local law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this District and Defendant does business in this District.

## PARTIES

7.    Plaintiffs, the People of the State of New York, are represented by their chief legal officer, Andrew M. Cuomo, Attorney General of the State of New York. Where the interests and well-being of the People of the State of New York as a whole are implicated, as here, the Attorney General possesses *parens patriae* authority to commence legal actions in federal court for violations of federal and state law.

8.    The State of New York has a quasi-sovereign interest in protecting residents from the harmful effects of race discrimination, including unlawful race discrimination in places of public accommodation, and preventing the substantial social and economic harm created thereby.

2

9.     The discriminatory practices at issue have harmed and will continue to harm a substantial
       segment of the population, namely African-Americans who attempt to gain admittance at
       Tonic East. In addition, these discriminatory practices impede the ability of all Tonic East
       patrons to enjoy a racially diverse environment in the establishment.

10.    Absent action by the Attorney General, African-Americans who are denied admittance into
       Tonic East will be unable to meaningfully and properly vindicate their rights and will,
       collectively, suffer irreparable harm. African-Americans who have been the subject of
       unlawful discrimination by a place of public accommodation are unlikely to bring private
       suits because they are often not in a position to know that they are being treated unfavorably
       as compared to Caucasians. In addition, these individuals often lack the financial resources
       and incentives to bring an action to recover what may be limited damages. If harmed
       individuals do bring private suits, however, their own individualized interests may impede
       their ability to effectively seek necessary broad injunctive relief to stop the unlawful
       discriminatory practices. Complete relief, therefore, cannot be obtained through private
       lawsuits by individual plaintiffs.

11.    Defendant 411 Rest. Corp. d/b/a Tonic East is a corporation formed under the laws of the
       State of New York with its principal place of business at 411 Third Avenue, New York, New
       York 10016. Defendant's owners are Mr. Mario Arcari and Mr. Oliver Caulfield.

12.    Defendant owns and manages Tonic East, a bar and restaurant located at 411 Third Avenue,
       New York, New York 10016.

## FACTUAL ALLEGATIONS

13.    Tonic East is a multi-level bar and restaurant that sells and serves liquor and food for
       consumption on its premises. Tonic East serves the general public, and often serves

3

hundreds of customers on a given evening.

14.     The Office of the Attorney General ("OAG") received complaints from African-American individuals who were denied admittance into Tonic East based on alleged dress code violations.

15.     One African-American male complainant was told that he could not enter Tonic East because he was wearing Nike Air Force One sneakers, notwithstanding that other Caucasian patrons wearing other brands of sneakers and dressed casually had been allowed to enter without incident. Upset at being denied admission, the African-American male asked to speak to Tonic East management. The manager stated that the dress code policy prohibited Nike Air Force One sneakers, Rocawear clothing, and Sean Jean clothing.

16.     On another occasion, an African-American female complainant was told that her two African-American friends could not be admitted into Tonic East because they were wearing baggy jeans and tee shirts. However, they witnessed the door staff admitting numerous similarly-dressed Caucasian patrons into Tonic East that evening. Very upset at being denied admission, the African-American individuals asked to speak to Tonic East management. The manager stated that the dress code policy prohibited hip-hop clothing and urban wear, which included Rocawear clothing and Sean Jean clothing.

17.     Based on the complaints, the OAG initiated a confidential law enforcement investigation to determine whether Tonic East unlawfully discriminates against African-Americans through the application and enforcement of its dress code policy.

18.     On or about September 7, 2007, two OAG undercover African-American male investigators tried to gain admittance into Tonic East. Both investigators wore baggy jeans and Nike Air Force One sneakers. One investigator wore a Sean Jean button-down shirt and the other

wore a Rocawear button-down shirt. When the two African-American investigators attempted to gain admittance, the door staff person informed them that Nike Air Force One sneakers were not permitted and denied them admittance. The door staff person, who identified himself as "T," also stated that Timberland boots were prohibited. "T" told the investigators that this was management's policy. "T" served as the head of security for Tonic East and was regularly responsible for determining whether a patron would be admitted to the establishment.

19.    On or about September 14, 2007, two OAG undercover Caucasian male investigators, dressed in clothing similar to what the two African-American investigators had worn the prior week, tried to gain admittance into Tonic East and were admitted without incident by "T." Both investigators wore baggy jeans and Nike Air Force One sneakers. One investigator wore a Sean Jean button-down shirt and the other wore a Rocawear button-down shirt. Once inside, the investigators observed several patrons who were wearing sneakers, jeans, and other casual clothing, including a Caucasian male who was wearing Nike Air Force One sneakers.

20.    Based on the results of the undercover tests, the OAG issued a subpoena requesting the production of relevant documents, interviewed management personnel, and took sworn testimony from "T."

21.    The OAG's investigation confirmed that Tonic East management had adopted and instructed the door staff to implement an unwritten dress code policy designed to exclude individuals wearing what is commonly referred to as "hip-hop" clothing or "urban wear." Tonic East management directed "T" and other door staff to deny entry to individuals wearing certain brands of clothing and shoes, including Sean Jean shirts, Rocawear shirts, Timberland boots,

and Nike Air Force One sneakers. The implementation of this dress code policy disparately impacts African-Americans because it results in the disproportionate exclusion of African-Americans from Tonic East.

22.    Furthermore, the dress code was enforced inconsistently and in a discriminatory manner. On various occasions, Mr. Kenneth Caulfield and Mr. Peter Arcari, the general managers of the establishment, instructed "T" and other door staff to deny admittance to African-American patrons based upon alleged violations of the unwritten dress code policy, but allowed similarly-dressed Caucasian patrons to enter the establishment.

23.    Despite repeated complaints from African-American patrons alleging that the dress code policy was discriminatory, Tonic East management refused to modify the policy or the manner it which it was implemented.

24.    At all relevant times, Mr. Kenneth Caulfield, Mr. Peter Arcari, "T," and the other door staff were acting with the consent of Defendant, under the control and supervision of Defendant, and within their authority as agents of Defendant.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1981

25.    42 U.S.C. § 1981 guarantees all persons the same right "to make and enforce contracts . . . as is enjoyed by white citizens."

26.    By its pattern and practice of denying African-Americans admission into Tonic East based on their race and/or color, Defendant has denied African-Americans the same rights enjoyed by white citizens to purchase food and beverages at Tonic East.

27.    Defendant has thereby violated 42 U.S.C. § 1981.

## SECOND CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW § 296(2)(a)

28.     New York State Human Rights Law § 296(2)(a) makes it unlawful for the owner, manager, agent or employee of any place of public accommodation "directly or indirectly, to refuse, withhold from or deny" to a person "any of the accommodations, advantages, facilities or privileges thereof" because of the person's race or color.

29.     Tonic East is a place of public accommodation within the meaning of New York State Human Rights Law § 296(2)(a).

30.     By its pattern and practice of denying African-Americans admission into Tonic East based on their race and/or color, Defendant has denied African-Americans the accommodations, advantages, facilities and privileges of a public accommodation on the basis of their race and/or color.

31.     Defendant has thereby violated New York State Human Rights Law § 296(2)(a).

## THIRD CAUSE OF ACTION
## NEW YORK STATE CIVIL RIGHTS LAW § 40

32.     New York State Civil Rights Law § 40 guarantees all persons "full and equal accommodations, advantages, facilities and privileges of any place of public accommodation," and makes it unlawful for the owner, manager, agent or employee of any place of public accommodation to "directly or indirectly, refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof" because of the person's race or color.

33.     Tonic East is a place of public accommodation within the meaning of New York State Civil Rights Law § 40.

34.    By its pattern and practice of denying African-Americans admission into Tonic East based on their race and/or color, Defendant has denied African-Americans the accommodations, advantages, facilities and privileges of a public accommodation on the basis of their race and/or color.

35.    Defendant has thereby violated New York State Civil Rights Law § 40.

**FOURTH CAUSE OF ACTION**
**NEW YORK STATE CIVIL RIGHTS LAW § 40-c**

36.    New York State Civil Rights Law § 40-c prohibits the denial of civil rights on the basis of race or color.

37.    By its pattern and practice of denying African-Americans admission into Tonic East based on their race and/or color, Defendant has denied African-Americans their civil right to have access to a restaurant and bar on the basis of their race and/or color.

38.    Defendant has thereby violated New York State Civil Rights Law § 40-c.

**FIFTH CAUSE OF ACTION**
**NEW YORK STATE EXECUTIVE LAW § 63(12)**

39.    New York State Executive Law § 63(12) prohibits repeated and persistent illegal acts in the carrying out of a business.

40.    Defendant has violated § 63(12) by its repeated and persistent violations of 42 U.S.C. § 1981, New York State Human Rights Law § 296(2)(a), New York State Civil Rights Law § 40, New York State Civil Rights Law § 40-c, and New York City Administrative Code § 8-107(4).

**SIXTH CAUSE OF ACTION**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-107(4)**

41.    New York City Administrative Code § 8-107(4) makes it unlawful for the owner, manager,

8

agent or employee of any place of public accommodation "directly or indirectly, to refuse, withhold from or deny" to a person "any of the accommodations, advantages, facilities or privileges thereof" because of the person's race or color.

42. Tonic East is a place of public accommodation within the meaning of New York City Administrative Code § 8-107(4).

43. By its pattern and practice of denying African-Americans admission into Tonic East based on their race and/or color, Defendant has denied African-Americans the accommodations, advantages, facilities and privileges of a public accommodation on the basis of their race and/or color.

44. Defendant has thereby violated New York City Administrative Code § 8-107(4).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

a) Declare that Defendant's pattern and practice of denying African-Americans admission into Tonic East based on their race and/or color violated 42 U.S.C. § 1981, New York State Human Rights Law § 296(2)(a), New York State Civil Rights Law § 40, New York State Civil Rights Law § 40-c, New York State Executive Law § 63(12), and New York City Administrative Code § 8-107(4);

b) Permanently enjoin Defendant, its employees, agents, and successors, and all other persons in active concert or participation with Defendant, from denying African-Americans admission into Tonic East based on their race and/or color;

c) Order Defendant to implement policies and procedures sufficient to prevent such unlawful discriminatory practices in the future;

d) Assess civil penalties pursuant to New York State Civil Rights Law § 40-d;

9

e)    Award appropriate compensatory and punitive damages; and

f)    Award costs, reasonable attorneys' fees, and such other relief as this Court may deem

just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial.

Dated: February ___, 2008
      New York, New York

ANDREW M. CUOMO
New York State Attorney General
120 Broadway
New York, New York 10271
<u>Counsel for Plaintiffs</u>

By: _____
    Jenny Rivera (JR-9368)
       Special Deputy Attorney General for Civil Rights
    Jeffrey Powell (JP-2665)
       Section Chief, Civil Rights Bureau
    Sunita Kini-Tandon (SK-0506)
       Assistant Attorney General, Civil Rights Bureau